1

**OKEEFE & ASSOCIATES
LAW CORPORATION, P.C.**

2
Sean A. O'Keefe, State Bar No. 122417
2 Park Plaza, Suite 650

3
Irvine, CA 92614
Phone: 949.334.4135

4
Fax: 949.274.8639
Email: sokeefe@okeefelc.com

5
Counsel to William John Murphy and

6
Cheryl Lynn Murphy, and subpoenaed witness
Margaret Murphy

7

8

9                  **UNITED STATES BANKRUPTCY COURT**

10                  **CENTRAL DISTRICT OF CALIFORNIA**

11                            **Santa Ana Division**

12

13

14    In re:                              | **Case No. 8:15-bk-15715-MW**

15    WILLIAM JOHN MURPHY and           | **Chapter 7 Proceeding**
      CHERLY LYNN MURPHY,

16

17              Debtors               | **MOTION TO QUASH SUBPOENA
                                        ISSUED TO NON-PARTY
18                                      MARGARET MURPHY AND FOR
                                        PROTECTIVE ORDER;
19                                      MEMORANDUM OF POINTS AND
                                        AUTHORITIES AND
20                                      DECLARATIONS OF SEAN A.
                                        O'KEEFE, MARGARET MURPHY,
21                                      WILLIAM J. MURPHY AND DR.
                                        ZUHRA MUSHERAFF IN SUPPORT
22                                      THEREOF**

23                                      **DATE: April 19, 2017
                                        TIME: 2:00 p.m.
24                                      PLACE: Courtroom 6C**

25

26

27

28

000011

1    Margaret Murphy, a seventy-six year old non-party (the "Movant" or "Margaret"), hereby

2    moves this Court for an order quashing the deposition subpoena issued by the plaintiffs, Vohne

3    Liche Kennels, Inc. and VLK Risk Consultants, Inc. (together "VLK"), attached hereto as Exhibit

4    "A" (the "Subpoena"), and granting a protective order barring any further effort to depose the

5    Movant pursuant to Federal Rules of Civil Procedure 45(d)(3), and 26(c). This relief is sought on

6    the following grounds:

7        A.  Compliance with the Subpoena would imperil Ms. Murphy's health;

8        B.  The issuance of the Subpoena to defendant William J. Murphy's ailing 76-

9            year-old mother was effectuated solely for harassment purposes; and

10       C.  Ms. Murphy's testimony is irrelevant to any issue of fact or law in contest in

11           the adversary proceeding, which is in fact the focus of the subpoena; and

12       This motion is made based upon the attached declarations of Sean A. O'Keefe, William J.

13    Murphy, Margaret Murphy, and Dr. Zuhra Musherraf[1], and the within points and authorities.

14       WHEREFORE, the Movant prays that the Court grant the foregoing relief.

15    DATED: March 27, 2017                    OKEEFE & ASSOCIATES
16                                            LAW CORPORATION, P.C.

17                                                    /s/ Sean A. O'Keefe
                                            By: _____
18                                              Sean A. O'Keefe attorneys for
19                                              Margaret Murphy

20

21

22

23

24

25

26

27

28

---

[1] Dr. Musherraf, Margaret Murphy's regular physician, is on maternity leave. Accordingly, her colleague at Kaiser Permanente, Dr. D. Kieu signed the declaration on her behalf.

000012

1

2

## **SUMMARY OF MATERIAL FACTS**

3        A.      The Movant. The Movant seeking relief is Margaret Murphy, the seventy-six-year-

4  old mother of the defendant, William J. Murphy. Margaret has suffered three strokes, she struggles

5  with the additional burden of diabetes, and a stent was inserted into her heart in December of

6  2016. As the declaration from Dr. Zuhra Musherraf, Margaret's physician, makes crystal clear,

7  Margaret's health is in a precarious state and she does not drive. If she is required to endure hours

8  of inquiries from an antagonistic litigant, who has already caused her severe stress, this harassment

9  could well precipitate another stroke, or even death.

10       B.      The Defendants.  Cheryl and William Murphy (the "Murphys") are the Defendants

11  in this adversary, and the debtors in the main bankruptcy case. The Murphys are both retired

12  police officers. They are held in highest regard in the local law enforcement community. William

13  Murphy is also a nationally recognized firearms trainer who provides training to law enforcement

14  and military personnel throughout the country.

15       C.      C & W Murphy, Inc.  Prior to the petition date, the Murphys owned and operated C

16  & W Murphy, Inc., a California corporation ("C&W"). C&W was in the business of providing law

17  enforcement and military consulting services and products to a national and international clientele.

18       In 2011, C&W entered into a contract with a Saudi Arabian corporation called SecureTech,

19  pursuant to which C&W agreed to supply 10,000 protective body armor plates to the Royal Guard

20  of the Kingdom of Saudi Arabia (the "Saudi Contract"). In order to fund the manufacturing cost

21  associated with this contract, C&W entered into a lending relationship with the Plaintiff (the

22  "Loan"). C&W was the sole borrower under the terms of the Loan, and there were no guarantors.

23       During the 2011 through 2013 period, VLK advanced approximately $10.0 million to the

24  C&W under the Loan, *and C&W made approximately $8.3 million in payments on account of this*

25  *obligation*. C&W fully intended to make the final payment due the Loan, a sum that is disputed,

26  upon the receipt of the last $5.6 million payment due under the Saudi Contract. Unfortunately,

27  days before this payment was scheduled to be paid, VLK contacted SecureTech's agent in Saudi

28  Arabia and demanded that SecureTech remit the $5.6 million payment to VLK.

000013

1    In support of the foregoing tortious demand, VLK stated that interest was due under its

2    loan contract with C&W. Since interest is prohibited under Sharia law, and since the agent

3    responsible had an adverse relationship with VLK (due to a prior contractual relationship with

4    VLK), SecureTech refused to make the final payment on the Saudi Contract.

5    VLK's tortious interference with the Saudi Contract not only deprived C&W of the ability

6    to repay the balance owed on the Loan, it created cash flow problems within the company. These

7    cash flow problems and litigation costs associated with VLK related litigation ultimately forced

8    this entity to file a Chapter 7 case. The Murphys concurrently filed an individual Chapter 7

9    petition, since they too had been rendered insolvent by VLK's actions as well.

10    D.    The Adversary Filed By VLK In 2016.  On June 7, 2016, VLK filed a complaint

11    (the "Complaint") against the Murphys, initiating Adversary No. 8:16-ap-01147-MW (the

12    "Adversary"). In the Complaint, VLK admits that C&W paid back 100% of the initial $6.0 million

13    advanced under the terms of the Loan.[2] However, the Complaint then proceeds to allege that the

14    Murphys "caused" C&W to draw down an additional $4.2 million after this repayment, which

15    allegedly was not repaid. According to VLK, when C&W made these later withdrawals, it did not

16    intend to repay the same.

17    Since the Murphys were never obligors on the Loan, and any communications regarding a

18    C&W debt would have been made in their capacity as officers, VLK's claim is patently untenable.

19    Any claim based upon these allegations lies solely against C&W, VLK's obligor. Moreover, VLK

20    needs to check its records. C&W's last major draw on the Loan was made on January 23, 2013

21    ($500,000)[3]. On March 7, 2014, *months after this draw*, C&W made a $2.0 million paydown on

22    the loan that it purportedly did not intend to pay when it was obtained.

23    Margaret Murphy's purported relevance to the foregoing untenable legal claim is based

24    upon the contention that C & W made avoidable transfers to Margaret in the 2012 through 2014

25    time frame, and these payments somehow tend to establish that the Murphys, who never owed any

26

27    [2] Paragraph 19 of the Complaint states: "By January 26, 2014, C&W failed to repay the Loan in full.
Plaintiffs loaned a total of $10.2 million to C&W from January 2012 through June 2014, but C&W only

28    paid back $6.0 million of principal and a portion of the 12% fee."
[3] A draw of $200,000 was made to pay a fee to vendor in June of 2014. VLK arranged for this fee.

4

1    money to VLK, "caused" C & W to borrow money from VLK without intending to "cause" this

2    corporation to repay the same.  As the facts set forth within confirm, this argument is meritless,

3    and hence the purported evidence sought by VLK through a deposition of Margaret is irrelevant.

4        E.    The Use of A Rule 2004 Motion To Evade A Pending Discovery Cut-off. The

5    discovery cut off set by this Court in the Adversary was February 28, 2017.  In an obvious effort

6    to evade this cut-off, and to evade the prohibition against conducting adversary discovery under

7    the guise of Rule 2004, VLK filed a Rule 2004 motion seeking discovery against the Murphys and

8    all of their family members, including Margaret Murphy. (See Ex. "B", O'Keefe Dec.). If the

9    Court reviews the following pleading paragraph from the Complaint filed in the Adversary, and

10   compares it to the relief sought in the 2004 Motion, this evasion is patently obvious:

> 21. Upon information and belief, Defendants fraudulently transferred assets out of
> C&W to themselves, their children, their son-in-law, and affiliated companies in
> the form of home mortgage payments and home renovations, hunting trips,
> designer jewelry purchases, art work purchases, exotic automobile purchases,
> firearms purchases, private jet trips and vacations, countless personal meals, and
> by gifting approximately $750,000.00 to Cristen Durham and approximately
> $80,000.00 to Jacquelyne Murphy for their purchases of a home, among other
> things, and all shared a set of American Express and Chase credit and debit cards
> used for both business and personal expenses. The expenses for the Saudi Contract
> were run, and the funds received by C&W under the Saudi Contract were used,
> through those same collective accounts.

18   (See, Exhibit "A", O'Keefe Decl.). Contrary to the statements in the Rule 2004 motion, VLK was

19   not seeking to use the 2004 Motion to gather information about the estates' assets and liabilities –

20   a task vested in the Chapter 7 trustee – but to conduct discovery outside the time limit set by this

21   Court, and through a procedural mechanism whose use was precluded given the pendency of the

22   Adversary. See In re Symington, 209 B.R. 678, 683–84 (Bankr.D.Md.1997) (stating that a Rule

23   2004 exam is undertaken before the filing of a lawsuit or motion whereas discovery under the

24   Federal Rules of Civil Procedure occurs thereafter); Sweetland v. Szadkowski (In re

25   Szadkowski), 198 B.R. 140, 141 (Bankr. D. Md. 1996); ("Once an adversary proceeding has

26   commenced ... discovery may be had only pursuant to the discovery provisions of the Federal

27   Rules of Civil Procedure"); In re Bennett Funding Group, Inc., 203 B.R. 24, 28

28   (Bankr.N.D.N.Y.1996) ("The well recognized rule is that once an adversary proceeding or

000015

1   contested matter has been commenced, discovery is made pursuant to FED.R.BANKR.P. 7026 et

2   seq., rather than by a Fed. R. Bankr. P. 2004 examination"); In re Sutera, 141 B.R. 539, 541

3   (Bankr.D.Conn.1992) (stating that Rule 2004 is inapplicable when contested matters or adversary

4   proceedings have been commenced and are pending); In re Blinder, Robinson & Co., Inc., 127

5   B.R. 267, 274 (D.Colo.1991) (holding that federal discovery rules not Rule 2004 applied to

6   examination of parties affected by adversary proceeding); In re Valley Forge Plaza Assoc., 109

7   B.R. 669, 674 (Bankr.E.D.Pa.1990) ("once an adversary proceeding or a particular contested

8   matter is under way, discovery sought in furtherance of litigation is subject to the F.R.Civ.P. rather

9   than the broader bounds of R. 2004"); In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702,

10  711 (Bankr.S.D.N.Y.1991) ( "The cases are in agreement that once an adversary proceeding is in

11  progress a creditor/party does not have a right to a 2004 examination").

12      The Movant would respectfully submit that had the Court been aware that VLK was

13  attempting to use Rule 2004 as a means to conduct discovery directly relevant to claims extant in a

14  pending adversary, the Court would have denied the motion. The Movant would respectfully

15  invite the Court to do so now, nunc-pro-tunc.

16      F.    The Subpoena Was Issued For Harassment Purposes. VLK is fully aware of

17  Margaret's advanced age, and the irrelevant nature of her potential testimony. However, it

18  recognizes that she offers a convenient pressure point: Mr. Murphy's obviously desires to protect

19  his ailing mother from harm. This is harassment, plain and simple.

20      Clear evidence of this improper motivation underlying the discovery effort against

21  Margaret is set forth in her declaration. As stated therein, in February VLK sent a subpoena duces

22  tecum to Margaret demanding that she produce copies of the C&W checks reflecting the payments

23  made to her, and receipts documenting the reasons for these payments. Since Margaret did not

24  have, or was unable to find any responsive documents in her possession and control, nothing was

25  produced in response to this subpoena.

26      Not content with this reality, Ashleigh Danker, counsel for VLK, called Margaret four or

27  five times minutes after the 10:00 a.m. document production deadline, and threatened her with

28  sanctions if she failed to produce documents that she did not have. This telephonic harassment so

000016

upset this woman it imperiled her health, forcing counsel for the Murphys to intervene, and transmit a declaration confirming her lack of any responsive documents.[3]

The purportedly "relevant evidence" that VLK and its counsel consider so important that they are willing to imperil the life of an elderly non-party is the following. During the 2012 through 2014-time frame, the following payments were made to Margaret by C & W:

| Date | Amount |
|------|--------|
| 5/26/2012 | $95.00 |
| 8/26/2012 | $5,000.00 |
| 12/5/2012 | $500.00 |
| 5/30/2013 | $500.00 |
| 3/3/2014 | $60,000.00 |
| 3/14/2014 | $25,000.00 |
| 3/15/2014 | $2000.00 |
| 4/7/2014 | $4,000.00 |
| Total | $97,095.00 |

Of the $97,095 that was paid to Margaret over a period of two years, $60,000 was a loan repayment, and $25,000 was repaid to C& W within a month, via a cashiers check. (See, Decl. Margaret Murphy). Notably, VLK has the documents confirming this fact. Accordingly, the net balance retained by Margaret, the grand sum of $12,095, was wages or expense reimbursements.

To put these payments within the appropriate financial context, during the time frame when these purportedly avoidable payments were made, C&W was generating over $4,000,000 in revenues and paying out millions of dollars to vendors and other obligors, *including over $9.3 million to VLK, of which $8.3 million was paid on the Loan*. Given these facts, VLK's contention that grilling Margaret over the facts relating to the paltry sums she received from C&W somehow supports VLK's contention that C&W did not intend to repay $4.2 million in alleged loan advances is absurd. *In sum, no rational basis exists for extracting testimony from Margaret, never mind a basis that would justify doing so under conditions that will imperil her life.*

---

[3] Insofar as Margaret's lack of any documents is concerned, this entirely understandable. Most employees do not make copies of the checks they receive from their employers. They simply cash them, and few people retain copies receipts relating to a part time work assignments for over four years.

000017

## II

## <u>LEGAL AUTHORITIES</u>

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iv), the presiding court "must quash or modify a subpoena" if it subjects the respondent to an "undue burden." This standard is satisfied where the evidence shows a deposition will have, or could have a serious adverse impact upon the proposed deponent's health. <u>See</u> <u>Case Corp. v. New Holland N. Am., Inc.</u>, 1998 WL 748950, at 1 (D. Kan. Oct. 7, 1998) ("Based on the medical testimony presented at the October 7th hearing, however, the court concludes that subjecting Mr. Gaeddert to a deposition, even under the best of circumstances, would constitute an undue threat to his health and well-being. The court found the testimony of Dr. Stevens persuasive on this point.").

In this case, the Declaration of Dr. Zuhra Musherraf, Margaret's physician, establishes that the health problems afflicting Margaret Murphy are serious and even life threatening. Enduring a deposition could materially exacerbate these conditions. Accordingly, the subpoena should be quashed.

Compelling grounds also exist for quashing the subpoena based upon Fed.R.Civ.P. 26(c)(1). This rule allows the court to issue a protective order to limit discovery where a party demonstrates the need for protection from "annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c)(1). Rule 26 also authorizes the Court to limit discovery where its "burden or expense ... outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2) (C)(iii).

In this case, VLK is pursuing discovery against Margaret, a non-party, solely to obtain leverage against her son, the defendant, William Murphy. Her testimony will not aid VLK's case, which is legally untenable in any event, one iota. Accordingly, the subpoena should be quashed and a protective order should issue barring further depositions.

000018

### III

### CONCLUSION

For the foregoing reasons, the Movant would respectfully pray that the Court quash the Subpoena and issue a protective order barring VLK from any further attempt to depose Margaret Murphy.

DATED: March 27, 2017                     OKEEFE & ASSOCIATES
                                          LAW CORPORATION, P.C.

                                                  /s/ Sean A. O'Keefe
                                          By: _____
                                                  Sean A. O'Keefe attorneys for
                                                  Margaret Murphy

000019

1

## DECLARATION OF SEAN A. O'KEEFE

2          I, Sean A. O'Keefe, hereby declare and state as follows:

3          1.          I am over the age of eighteen years.

4          2.          The facts stated herein are within my personal knowledge.

5          3.          I am counsel to Cheryl Murphy and William Murphy, the defendants in this case.

6          4.          Attached hereto as Exhibit "A" is a true and correct copy of the subpoena issued by

7    Vohne Liche Kennels, Inc., and VLK Risk Consultants (the "Plaintiffs") to Margaret Murphy.

8          5.          Attached hereto as Exhibit "B" is at true and correct copy of the Rule 2004 motion

9    wherein the Plaintiff sought authorization to conduct discovery.

10         6.          Attached hereto as Exhibit "C" is a true and correct copy of the complaint that was

11    filed in this adversary by the Plaintiffs.

12         I declare that the foregoing is true and correct under the penalty of perjury.

13         Executed this 27th day of March, 2017.

14

15                                                            /s/ Sean A. O'Keefe
                                                    _____
16                                                            Sean A. O'Keefe

17

18

19

20

21

22

23

24

25

26

27

28

000020

**EXHIBIT "A"**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____Central_____    District of _____California_____

In re __C & W Murphy and Associates, Inc.__       Case No. __8:16-bk-10045-MW__
                    Debtor

                                                   Chapter __7__

## SUBPOENA FOR RULE 2004 EXAMINATION

To:  __Margaret Murphy_____
                    _(Name of person to whom the subpoena is directed)_

[X] _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE    Salisian | Lee LLP | DATE AND TIME |
|---|---|
| 550 S. Hope Street, Suite 750 | April 11, 2017 |
| Los Angeles, CA 90071 | 10:00 a.m. |

The examination will be recorded by this method: ____**Court reporter**____

[ ] _Production:_ You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __3/1/17__

                    CLERK OF COURT

                                        OR

                              /s/ Ashleigh A. Danker
    _____        _____
    _Signature of Clerk or Deputy Clerk_      _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_ Vohne Liche Kennels, Inc. and VLK Risk Consultants, Inc., who issues or requests this subpoena, are:   Ashleigh A. Danker, Esq., Danker Law Firm 550 S. Hope Street, Suite 750, Los Angeles, CA 90071; adanker@dankerlawfirm.com; 424-248-8184

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

000022

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☒ I served the subpoena by delivering a copy to the named person as follows:   Margaret Murphy, c/o Sean O'Keefe, Esq.

  575 Anton Blvd., Suite 1050, Newport Beach, CA 92626; via Overnight Delivery _____

_____ on *(date)*   3/1/17 _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $  75.00 _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date:   3/1/17 _____

                                        /s/ Ashleigh A. Danker
                                        _____
                                                *Server's signature*

                                        Ashleigh A. Danker
                                        _____
                                                *Printed name and title*

                                        550 S. Hope Street, Suite 750, L.A., CA. 90071
                                        _____
                                                *Server's address*


Additional information concerning attempted service, etc.:

000023

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**EXHIBIT "B"**

Ashleigh A. Danker (CA Bar No. 138419)
Email: adanker@dankerlawfirm.com
Danker Law Firm
550 S. Hope Street, Suite 750
Los Angeles, CA 90071-2627
Telephone: (424) 248-8184
Facsimile: (866) 251-5009

Counsel for Vohne Liche Kennels, Inc.
And VLK Risk Consultants, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | ) Case No. 8:16-bk-10045-MW |
| | ) |
| C & W MURPHY AND ASSOCIATES, INC., | ) Chapter 7 |
| | ) |
| Debtor. | ) **NOTICE OF MOTION AND MOTION PURSUANT TO F.R.B.P. 2004 AND L.B.R. 2004-1 FOR AN ORDER AUTHORIZING THE EXAMINATION OF AND PRODUCTION OF DOCUMENTS BY MARGARET MURPHY; DECLARATION OF ASHLEIGH A. DANKER SUPPORT THEREOF** |
| | ) |
| | ) Date: [*No Hearing Required*] |
| | ) Time: [*No Hearing Required*] |
| | ) Place: Courtroom 6C |
| | )      411 W. Fourth St. |
| | )      Santa Ana, CA 92701 |
| | ) |
| | ) **[No Hearing Required – LBR 2004-1(d)]** |

**TO THE HONORABLE MARK WALLACE, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; WENETA KOSMALA, CHAPTER 7 TRUSTEE; COUNSEL FOR WENETA KOSMALA, CHAPTER 7 TRUSTEE; THE DEBTOR; COUNSEL FOR THE DEBTOR; MARGARET MURPHY; AND OTHER PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Bankruptcy Procedure 2004

("Rule 2004") and L.B.R. 2004-1, creditors Vohne Liche Kennels, Inc. ("VLK, Inc.") and VLK

Risk Consultants, Inc. ("VLK Risk," and collectively with VLK, Inc., "VLK") shall move and

hereby do move (the "**Motion**") for an Order in the above-captioned bankruptcy case (i) requiring

the production of documents described in **Exhibit A** (the **"Documents"**) hereto, and a declaration

under penalty of perjury attesting to the completeness thereof, by Margaret Murphy ("Margaret"),

an insider of debtor C & W Murphy and Associates, Inc. dba Surefire Institute ("C&W" or the

"Debtor"), to VLK at **10:00 a.m. on February 24, 2017** at the offices of the Danker Law Firm,

550 S. Hope Street, Suite 750, Los Angeles, CA 90071, or at such other date, time, and place as

may be mutually agreed by VLK and Margaret, (ii) authorizing VLK to take, and directing

Margaret to appear for, an examination under Rule 2004 by VLK at a date and time to be mutually

agreed by VLK and Margaret, and continuing for such time until the examination is completed[1],

(iii) authorizing VLK to issue  subpoenas to compel Margaret's production of documents and

appearance for examination, and (iv) granting such other and further relief as the Court deems just

and proper.

     **PLEASE TAKE FURTHER NOTICE** that an address for service of process for Margaret

is:

> Margaret Murphy
> 1660 Northwood Road, # 276B
> Seal Beach, CA 90740

     **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion,

the attached Memorandum of Points and Authorities, the Declaration of Ashleigh A. Danker, and

the pleadings and records on file in this case, of which the Court is requested to take judicial notice.

---

[1] L.B.R. 2004-1(a) permits an order for production of documents under Rule 2004 to be entered
<u>without</u> requiring the moving party to also request examination of the producing party.  Here,
VLK does not wish to examine Margaret until it has had an adequate opportunity to review the
documents to be produced by the Debtor and third parties, including Margaret, from whom VLK
is seeking documents.  Accordingly, VLK requests approval to examine Margaret under Rule
2004 on a date and at a time to be agreed by the parties in the future, without need to seek a
further Order from the Court.

C&W - 2004 Motion - Margaret Murphy.docx

000027

**PLEASE TAKE FURTHER NOTICE** that the Motion is made on the grounds that: (1) the **Documents** will aid VLK in evaluating the assets and liabilities of the Debtor, including potential looting of the Debtor by its principals, William J. Murphy ("Bill") and Cheryl Lynn Murphy ("Cheryl," and, collectively, the "Murphys"), joint debtors in related bankruptcy case 8:15-bk- 15715-MW (the "Murphy Case") who are the subject of a nondischargeability complaint by VLK seeking, among other things, denial of the Murphys' discharges based on their improper and fraudulent actions regarding C&W and its assets and liabilities; (2) pursuant to L.B.R. 2004-1(a), VLK's counsel has met and conferred with Margaret regarding this Rule 2004 production of documents; and (3) this matter cannot proceed under Federal Rules of Bankruptcy Procedure 7030 or 9014 because there is no pending adversary proceeding or contested matter in this case to which VLK is a party and this discovery would be relevant.

**PLEASE TAKE FURTHER NOTICE** that the Motion is being filed with the Court at the address set forth below and is available for public inspection. Any party-in-interest may obtain a complete copy of the Motion, including the Memorandum of Points and Authorities and Declaration of Ashleigh A. Danker, at that party's own expense from the Court's file or by contacting Ashleigh A. Danker, Esq. at the Danker Law Firm, 550 S. Hope Street, Suite 750, Los Angeles, CA 90071, or *adanker@dankerlawfirm.com*.

**PLEASE TAKE FURTHER NOTICE** that a motion for a protective order may be filed under Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c). Pursuant to L.B.R. 2004-1(f), a motion for a protective order must be filed and served not less than 14 days before the date of production of documents, and set for hearing not less than 2 days before the production of documents, unless an order shortening time is granted by the Court pursuant to L.B.R. 9075-1. Such a motion for protective order must be filed with the Court and served on VLK and the Office of the United States Trustee as follows:

| **For Filing with the Court:** | **For Service on the U.S. Trustee** |
|---|---|
| Clerk's Office | c/o Nancy Goldenberg, Esq. |
| United States Bankruptcy Court | Office of the United States Trustee |
| 411 W. Fourth Street | 411 W. Fourth Street, Suite 7160 |
| Santa Ana, CA 92701 | Santa Ana, CA 92701 |

C&W - 2004 Motion - Margaret Murphy.docx

000028

**For Service on VLK:**
Ashleigh A. Danker, Esq.
Danker Law Firm
550 S. Hope Street, Suite 750
Los Angeles, CA 90071

**PLEASE TAKE FURTHER NOTICE** that VLK files this Motion without prejudice to its right to seek further examination of or production of documents by Margaret and others under Rule 2004 and L.B.R. 2004-1.

**PLEASE TAKE FURTHER NOTICE that the Court may grant this Motion without a hearing. Moreover, the failure to timely file and serve a motion for a protective order and to set it for hearing may be regarded by the Court as consent to the granting of the Motion and a waiver of any basis for a protective order.**

Dated: February 1, 2017                     DANKER LAW FIRM

                                            By:   /s/ Ashleigh A. Danker
                                                   Ashleigh A. Danker
                                            Counsel for Vohne Liche Kennels, Inc.
                                            And VLK Risk Consultants, Inc.

4

C&W - 2004 Motion - Margaret Murphy.docx                                    000029

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

This Memorandum of Points and Authorities is submitted by VLK in support of its motion (the "Motion") for an Order pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") and L.B.R. 2004-1 (i) requiring production of the documents described in **Exhibit A** (the **"Documents"**) hereto, and a declaration under penalty of perjury attesting to the completeness thereof, by Margaret Murphy ("Margaret"), an insider of debtor C & W Murphy and Associates, Inc. dba Surefire Institute ("C&W" or the "Debtor"), to VLK at **10:00 a.m. on February 24, 2017** at the offices of the Danker Law Firm, 550 S. Hope Street, Suite 750, Los Angeles, CA 90071, or at such other date, time, and place as may be mutually agreed by VLK and Margaret (ii) authorizing VLK to take, and directing Margaret to appear for, an examination under Rule 2004 by VLK at a date and time to be mutually agreed by VLK and Margaret, and continuing for such time until the examination is completed, (iii) authorizing VLK to issue subpoenas to compel Margaret's production of documents and appearance for examination, and (iv) granting such other and further relief as the Court deems just and proper.

The Motion is based on the attached Declaration of Ashleigh A. Danker ("Danker Decl.").

**II.**

**FACTS**

C&W filed the above-captioned bankruptcy case on January 6, 2016 (the "Petition Date"). Its initial Section 341(a) meeting of creditors was held on February 18, 2016 and has been held and continued multiple times thereafter. The next meeting is currently scheduled for February 2, 2017.

C&W is owned by related individual debtors William J. Murphy ("Bill") and his wife, Cheryl Murphy ("Cheryl" and, together with Bill, the "Murphys"). Cristen Durham ("Cristen") and Jacquelyn Murphy ("Jackie") are the Murphys' adult children. Brandon Durham ("Brandon") is Cristen's husband. Margaret is Bill Murphy's mother. Reagan Industries, Inc. is an entity believed to be owned by Cristen. Savannah Corp. is an entity believed to be owned by Bill. C&W

5

Danker Law Firm

Wyoming is believed to be owned by Bill and Cheryl, and FTA is a dba of Cheryl. Danker Decl., ¶ 3.

The Debtor's primary years of operation were 2012-2014. During this period, the Debtor made payments to Margaret totaling nearly $100,000 (the "**Payments**"), purportedly as expense reimbursements or loan repayments. Copies of the eight (8) checks paid to Margaret are attached hereto as **Exhibit B.** VLK is not aware of any consideration given by Margaret in exchange for these payments. Danker Decl., ¶ 4.

VLK is the plaintiff in an action in Orange County Superior Court against C&W, the Murphys, and other related parties, Case No. 30-2015-00795499-CU-BC-CJC (the "State Action"), currently stayed as to C&W and the Murphys. In addition, VLK is the plaintiff in a nondischargeability action filed against the Murphys on June 7, 2016, Adv. Proc. 8:16-ap-01147-MW, alleging claims under 11 U.S.C §§ 523(a)(2)(A) and (a)(6) and 727(a)(3), (a)(5), and (a)(7) (the "Discharge Action"). VLK is owed in excess of $5.2 million. *See* Danker Decl., ¶ 5.

VLK believes that the Murphys looted C&W of millions of dollars, including causing C&W to make extravagant gifts to the Murphys, their children, and Margaret in preparation for its and their (the Murphys') bankruptcy filings. The **Documents** are material to VLK's investigation of the Debtor's assets and liabilities.

The purpose of the Motion is to aid VLK in evaluating the assets and liabilities of C&W, including, without limitation, investigating whether the Murphys' actions toward C&W merit denial of their discharges under 11 U.S.C. § 727(a)(7).

### III.

### RELIEF REQUESTED

By this Motion, VLK seeks an Order (i) requiring production of the **Documents**, and a declaration under penalty of perjury attesting to the completeness thereof, by Margaret to VLK at **<u>10:00 a.m. on February 24, 2017</u>** at the offices of the Danker Law Firm, 550 S. Hope Street, Suite 750, Los Angeles, CA 90071, or at such other date, time, and place as may be mutually agreed by VLK and Margaret, (ii) authorizing VLK to take, and directing Margaret to appear for, an

6

examination under Rule 2004 by VLK at a date and time to be mutually agreed by VLK and

Margaret, and continuing for such time until the examination is completed[2], (iii) authorizing VLK

to issue  subpoenas to compel Margaret's production of documents and appearance for

examination, and (iv) granting such other and further relief as the Court deems just and proper.

## IV.

### BASIS FOR RELIEF REQUESTED

There is good cause to grant the Motion so that VLK can evaluate the assets and liabilities

of C&W and investigate whether C&W was looted by the Murphys.

Rule 2004 authorizes the Court to order the examination of "any entity." F.R. Bankr. P.

2004(a).  Pursuant to Rule 2004, the Court may also compel the production of documents.  F.R.

Bankr. P. 2004(c) ("The attendance of an entity for examination and the production of

documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance

of witnesses at a hearing or trial.").

Rule 2004(b) provides that a Rule 2004 examination may relate to "acts, conduct, or

property or the liabilities and financial condition of the debtor, or to any matter which may affect

the administration of the debtor's estate…."  "It is well established that the scope of a Rule 2004

examination is exceptionally broad ….  Examinations under Rule 2004 are allowed for the

'purpose of discovering assets and unearthing frauds' and have been compared to a 'fishing

expedition.'"  *Dynamic Fin. Corp. v. Kipperman (In re N. Plaza, LLC),* 395 B.R. 113, 122 n.9

(S.D. Cal. 2008) (citation omitted); *see also In re Dinubilo*, 177 B.R. 932, 939 (E.D. Cal. 1993)

---

[2] L.B.R. 2004-1(a) permits an order for production of documents under Rule 2004 to be entered
<u>without </u>requiring the moving party to also request examination of the producing party.  Here,
VLK does not wish to examine Margaret until it has had an adequate opportunity to review the
documents to be produced by the Debtor and third parties, including Margaret, from whom VLK
is seeking documents.  Accordingly, VLK requests approval to examine Margaret under Rule
2004 on a date and at a time to be agreed by the parties in the future, without need to seek a
further Order from the Court.

C&W - 2004 Motion - Margaret Murphy.docx

000032

("The range of discoverable subject matter in a Rule 2004 examination is 'unfettered and broad.'") (citation omitted).

L.B.R. 2004-1(a) permits an order for production of documents under Rule 2004 to be entered <u>without</u> requiring the moving party to also request examination of the producing party.

The documents requested hereby easily fit within the authorization of Rule 2004 and the Debtor should be ordered to produce them.

## V.

### ALL PROCEDURAL REQUIREMENTS HAVE BEEN SATISFIED

As set forth in the attached declaration of Ashleigh A. Danker, VLK has conferred with Margaret, concerning production of the Documents.

VLK's request for production cannot proceed under Federal Rules of Bankruptcy Procedure 7030 or 9014 because VLK is not a party to any pending adversary proceeding or contested matter in this case in which such discovery would be relevant.

An address for service of legal process on Margaret is:

Margaret Murphy
1660 Northwood Road, # 276B
Seal Beach, CA 90740

As required by L.B.R. 2004-1(c), a copy of the Motion and its supporting papers were duly served as reflected on the proof of service attached hereto.

///

///

///

8

000033

## VI.

## CONCLUSION

For the reasons set forth above, the Court is respectfully requested to grant the Motion and enter an Order (i) requiring the production of the **Documents**, and a declaration under penalty of perjury attesting to the completeness thereof, by Margaret to VLK at **10:00 a.m. on February 24, 2017** at the offices of the Danker Law Firm, 550 S. Hope Street, Suite 750, Los Angeles, CA 90071, or at such other date, time, and place as may be mutually agreed by VLK and Margaret, (ii) authorizing VLK to take, and directing Margaret to appear for, an examination under Rule 2004 by VLK at a date and time to be mutually agreed by VLK and Margaret, and continuing for such time until the examination is completed[3], (iii) authorizing VLK to issue  subpoenas to compel Margaret's production of documents and appearance for examination, and (iv) granting such other and further relief as the Court deems just and proper.

Dated: February 1, 2017                                DANKER LAW FIRM


                                                       By:   /s/ Ashleigh A. Danker
                                                             Ashleigh A. Danker
                                                       Counsel for Vohne Liche Kennels, Inc.
                                                       And VLK Risk Consultants, Inc.

---

[3] L.B.R. 2004-1(a) permits an order for production of documents under Rule 2004 to be entered without requiring the moving party to also request examination of the producing party.  Here, VLK does not wish to examine Margaret until it has had an adequate opportunity to review the documents to be produced by the Debtor and third parties, including Margaret, from whom VLK is seeking documents.  Accordingly, VLK requests approval to examine Margaret under Rule 2004 on a date and at a time to be agreed by the parties in the future, without need to seek a further Order from the Court.

C&W - 2004 Motion - Margaret Murphy.docx

000034

## DECLARATION OF ASHLEIGH A. DANKER

I, Ashleigh A. Danker, declare as follows:

1.      I am the principal of the Danker Law Firm, bankruptcy counsel for Vohne Liche Kennels, Inc. ("VLK, Inc.") and VLK Risk Consultants, Inc. ("VLK Risk," and collectively with VLK, Inc., "VLK") in the above-captioned bankruptcy case.  Unless otherwise defined, all capitalized terms used herein are as defined in the *Motion* to which this declaration is attached.  I have personal knowledge of the facts in this declaration and, if called as a witness, could and would testify competently to the facts set forth herein.

2.      C&W filed the above-captioned bankruptcy case on January 6, 2016 (the "Petition Date").  Its initial Section 341(a) meeting of creditors was held on February 18, 2016 and has been held and continued multiple times thereafter.  The next meeting is currently scheduled for February 2, 2017.  On behalf of VLK, I have attended all sessions of the meeting and the Section 341(a) meeting held in the related bankruptcy case of William J. Murphy and Cheryl Murphy, case no. 8:15-bk-15715-MW.

3.      C&W is owned by related individual debtors William J. Murphy ("Bill") and his wife, Cheryl Murphy ("Cheryl" and together with Bill, the "Murphys").  Cristen Durham ("Cristen") and Jacquelyn Murphy ("Jackie") are the Murphys' adult children.  Brandon Durham ("Brandon") is Cristen's husband.  Margaret Murphy ("Margaret") is Bill's mother.  Reagan Industries, Inc. is an entity believed to be owned by Cristen.  Savannah Corp. is an entity believed to be owned by Bill Murphy.  C&W Wyoming is believed to be owned by Bill and Cheryl, and FTA is a dba of Cheryl Murphy.

4.      The Debtor's primary years of operation were 2012-2014.  During this period, the Debtor's primary operating account was maintained at JPMorgan Chase Bank, N.A., Account 406629340 ("Account x-9340").  I have obtained and reviewed, among other things, the account statements and cancelled checks for Account x-9340.  During 2012-2014, the Debtor made payments to Margaret totaling nearly $100,000 (the "**Payments**"), purportedly as expense

C&W - 2004 Motion - Margaret Murphy.docx

1  reimbursements or loan repayments.  Copies of the eight (8) checks paid to Margaret from

2  Account x-9340 are attached hereto as **Exhibit B.**  I am not aware of any consideration given by

3  Margaret in exchange for these payments.

4      5.      VLK is the plaintiff in an action in Orange County Superior Court against C&W,

5  the Murphys, and other related parties, Case No. 30-2015-00795499-CU-BC-CJC (the "State

6  Action"), currently stayed as to C&W and the Murphys.  In addition, VLK is the plaintiff in a

7  nondischargeability action filed against the Murphys on June 7, 2016, Adv. Proc. 8:16-ap-01147-

8  MW, alleging claims under 11 U.S.C §§ 523(a)(2)(A) and (a)(6) and 727(a)(3), (a)(5), and (a)(7)

9  (the "Discharge Action").  VLK is owed in excess of $5.2 million.

10      6.      VLK believes that the Murphys looted C&W of millions of dollars, including

11  causing C&W to make extravagant gifts to the Murphys, their children, and Margaret in

12  preparation for its and their (the Murphys') bankruptcy filings.  The **Documents** are material to

13  VLK's investigation of the Debtor's assets and liabilities.

14      7.      On January 31, 2017, I conferred with Margaret Murphy, by telephone regarding

15  this Motion in accordance with L.B.R. 2004-1(a).

16      I declare under penalty of perjury under the laws of the United States of America that the

17  foregoing is true and correct.

18

19  Dated:  February 1, 2017            /s/ Ashleigh A. Danker

20                                                Ashleigh A. Danker

21

22

23

24

25

26

27

28

11

## EXHIBIT A: DOCUMENTS TO BE PRODUCED

## DEFINITIONS AND RULES OF CONSTRUCTION

1.     The terms "all" and "any" shall include "any and all."

2.     "Account x-9340" means C&W checking account no. 406629340 at JPMorgan Chase Bank, N.A.

3.     "C&W" or the "Debtor" means C & W Murphy and Associates, Inc., a California corporation and chapter 7 debtor in bankruptcy case number 8:16-bk-10045-MW.

4.     "Communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and includes all oral and written communications of any nature, type or kind, including, but not limited to, any Documents, telephone conversations, discussions, meetings, facsimiles, e-mails (to be produced in native format), papers, memoranda, and other medium through which any information is conveyed or transmitted.

5.     The term "Document" has the meaning assigned to "writings" and "recordings" in Rule 1001(1) of the Federal Rules of Evidence, and includes written materials, tape or digital recordings and computer disks, computer drives and computer files.

6.     The term "Person" means an individual, or a firm, partnership, company, corporation, trustee, association, or any public or private entity.

7.     To "Identify," in whatever tense or form used, a Document means to give, to the extent known, the (i) type of Document, (ii) general subject matter, (iii) date of the Document, (iv) author(s), (v) addressee(s), and (vi) recipient(s).

8.     "Payments" means check nos. 2210, 2337, 2444, 2593, 2826, 2848, 2869, 2874 made payable to You from Account x-9340.

9.     "Trustee" refers to Weneta M.A. Kosmala, chapter 7 trustee for C & W Murphy and Associates, Inc., in bankruptcy case number 8:16-bk-10045-MW.

10.     "VLK" refers to Vohne Liche Kennels, Inc. or VLK Risk Consultants, Inc., or both.

12

11.    "You" and "your" refers to Margaret Murphy.

12.    If any Document requested herein is withheld on the basis of any claim of privilege, You are requested to submit, in lieu of any such Document, a written statement (a) Identifying the Person(s) who prepared or authored the Document and, if applicable, the Person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepared or transmitted, (c) describing the nature of the Document (*e.g.,* letter, telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product, and (d) Identifying the paragraph of the request to which the Document relates.  If a portion of an otherwise responsive Document contains information subject to a claim of privilege, only that portion of the Document subject to the claim of privilege shall be deleted or redacted from the Document and the rest shall be produced.

13.    Unless otherwise indicated, the Documents to be produced include all Documents prepared, sent, dated, received or used at any time after the formation of C&W.

## DOCUMENTS TO BE PRODUCED BY YOU

1.    All Documents and Communications related to all advances (e.g., expense reimbursement, loans, or direct bill payment to third parties) or other consideration You provided to or for the benefit C&W, including, without limitation, for the Payments.

2.    A declaration under penalty of perjury attesting to the completeness of Your document production.

## END OF EXHIBIT A

13

000038

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 **EXHIBIT B**

28

14

11-Oct-16                                                                10Oct16-1212

## THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION
### GROUP ID G10Oct16-1212
Sequence number 006490523425  Posting date 29-May-12 Amount 95.00

---

C & W MURPHY AND ASSOCIATES
P.O. BOX 554
YORBA LINDA, CALIFORNIA 92885

2210

90-7162-3222

DATE 5/26/12

PAY TO THE ORDER OF _Margaret Murphy_____ $ 95.00

_ninety-five dollars_ ⁰⁰/₁₀₀ _____ DOLLARS

CHASE ◆
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _shirt supplies_                          _Cristen Durham_

⑆002210⑆ ⑉322271627⑉ 406629340⑈

---

EXHIBIT B, page 000046

11-Oct-16                                                    10Oct16-1212

**THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION**
**GROUP ID G10Oct16-1212**
Sequence number 004470558053  Posting date 29-Aug-12 Amount 5000.00

2337

**C & W MURPHY AND ASSOCIATES**
23665 VIA DEL RIO
YORBA LINDA, CALIFORNIA 92887

90-7162-3222

DATE 8/26/12                    $5000.00

PAY TO THE ORDER OF Margaret Murphy

five thousand dollars 00/100                    DOLLARS

CHASE ○
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR meals                    Crusten Dunham

⑆002337⑆ ⑆322271627⑆ 406629340⑆ ⑆0000500000⑆

11-Oct-16                                                                    10Oct16-1212

THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION
GROUP ID G10Oct16-1212
Sequence number 007490988303 Posting date 10-Dec-12 Amount 500.00

C & W MURPHY AND ASSOCIATES
23665 VIA DEL RIO
YORBA LINDA, CALIFORNIA 92887

2444

90-7162-3222

DATE 12/5/12

Margaret Murphy                                        $ 500.00

PAY TO THE ORDER OF

Five hundred dollars 00/100                            DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR Supplies                        Cristen Dunham

⑆002444⑆ ⑈322271627⑈ 406629340⑈

11-Oct-16                                                                    10Oct16-1212

**THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION**
**GROUP ID G10Oct16-1212**
Sequence number 007370527891  Posting date 05-Jun-13 Amount 500.00



Seq: 246
Batch: 835103
Date: 06/04/13

11-Oct-16                                                              10Oct16-1212

**THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION**
**GROUP ID G10Oct16-1212**
Sequence number 001390194611  Posting date 04-Mar-14  Amount 60000.00

2826

C & W MURPHY AND ASSOCIATES
23665 VIA DEL RIO
YORBA LINDA, CALIFORNIA 92887

90-7162-3222

DATE 3-3-14

*Margaret Murphy*

PAY TO THE ORDER OF _____ $ 60,000.00

*Sixty thousand 00/100* _____ DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR *loan repay* _____

*Crister Durham*

⑈00 2826⑈ ⑉322271627⑈   406629340⑈

Seq: 177
Batch: 462355
Date: 03/04/14

EXHIBIT B, page 044

11-Oct-16                                                                10Oct16-1212

**THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION**
**GROUP ID G10Oct16-1212**
**Sequence number 006170899918  Posting date 17-Mar-14 Amount 25000.00**

2848

C & W MURPHY AND ASSOCIATES
23665 VIA DEL RIO
YORBA LINDA, CALIFORNIA 92887

90-7162-3222

DATE *3-14-14*

*Margaret Murphy*

PAY TO THE ORDER OF

*Twenty-five thousand    00/100* ————————— $ 25,000.00

DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR *Joan*

*Cristen Durham*

⑈002848⑈ ⑆322271627⑆ 4066 29340⑈

Seq:  201
Batch:  950481
Date: 03/14/14

11-Oct-16

THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION
GROUP ID G10Oct16-1212

10Oct16-1212

Sequence number 003070904264  Posting date 07-Apr-14  Amount 2000.00

2869

C & W MURPHY AND ASSOCIATES
23665 VIA DEL RIO
YORBA LINDA, CALIFORNIA 92887

90-7162-3222

DATE 3/15/14

PAY TO THE ORDER OF _Margaret Murphy_ ............................ $ 2000.00

_Two thousand_ 00/100 ............................ DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

_Cristen Dunham_

⑈002869⑈  ⑊322271627⑈  406629340⑈

Seq: 93
Batch: 922355
Date: 04/07/14

Margaret Murphy

11-Oct-16                                                                                                  10Oct16-1212

## THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION
### GROUP ID G10Oct16-1212
Sequence number 004290617364  Posting date 09-Apr-14 Amount 4000.00



C & W MURPHY AND ASSOCIATES
23565 VIA DEL RIO
YORBA LINDA, CALIFORNIA 92887

2874

90-7162-3222

DATE 4-7-14

PAY TO THE ORDER OF  Margaret Murphy                    $ 4000.00
four thousand no/100                                    DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR

⑈002874⑈ ⑆322271627⑆ 406629340⑈

Cristen Durham

Seq: 155
Batch: 030223
Date: 04/09/14

**EXHIBIT "C"**

000048

Neal S. Salisian (CA Bar No. 240277)
Email: neal.salisian@salisianlee.com
Natalie Rastegari (CA Bar No. 288105)
Email: natalie.rastegari@salisianlee.com
Salisian | Lee LLP
550 S. Hope Street, Suite 750
Los Angeles, CA 90071-2627
Telephone: (213) 622-9100
Facsimile: (800) 622-9145

-and-

Ashleigh A. Danker (CA Bar No. 138419)
Email: adanker@dankerlawfirm.com
Danker Law Firm
550 S. Hope Street, Suite 750
Los Angeles, CA 90071-2627
Telephone: (424) 248-8184
Facsimile: (866) 251-5009

Co-counsel for Vohne Liche Kennels, Inc.
And VLK Risk Consultants, Inc.

1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:15-bk-15715-MW |
| WILLIAM JOHN MURPHY and CHERYL LYNN MURPHY, | Chapter 7 |
| Debtors. | Adv. No. 8:16-ap-_____-MW |
| | **COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A), and (a)(6) and 727(a)(3), (a)(4), (a)(5) and (a)(7)** |
| VOHNE LICHE KENNELS, INC., an Indiana corporation, and VLK RISK CONSULTANTS, INC., an Indiana corporations, | |
| Plaintiffs, | Status Conference: |
| v. | Date: To be scheduled<br>Time:<br>Place: Courtroom 6C<br>411 W. Fourth St.<br>Santa Ana, CA 92701 |
| WILLIAM JOHN MURPHY, an individual, and CHERYL LYNN MURPHY, an individual, | |
| Defendants. | |

Danker Law Firm

Murphy - Nondischargeability Complaint v2

1    Plaintiffs Vohne Liche Kennels, Inc. ("VLK Inc.") and VLK Risk Consultants, Inc.  ("VLK

2    Risk," and, collectively with VLK Inc., "VLK" or "Plaintiffs") respectfully represent and allege

3    against joint debtors and defendants William John Murphy ("B. Murphy") and Cheryl Lynn

4    Murphy ("C. Murphy," and collectively with B. Murphy, the "Defendants" or the "Murphys") as

5    follows:

### I.

### JURISDICTION AND VENUE

9    1.    This adversary proceeding arises in and relates to the chapter 7 case *In re William*

10   *John Murphy and Cheryl Lynn Murphy*, Case No. 8:15-bk-15715-MW, filed on November 25,

11   2015 (the "Petition Date") and pending before the United States Bankruptcy Court for the Central

12   District of California, Santa Ana Division.  This Court has jurisdiction over this adversary

13   proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  It is a core proceeding under 28 U.S.C.

14   §157(b).

15   2.    This adversary proceeding is commenced pursuant to 11 U.S.C. §§ 523 (a)(2)(A)

16   and (a)(6) and 727(a)(3), (a)(5) and (a)(7) and Bankruptcy Rules 7001(4) and (6).

17   3.    The initial Section 341(a) meeting of creditors took place on January 6, 2016.

18   4.    On February 29, 2016, the Court entered an Order (Dkt No. 32) extending VLK's

19   time to file a complaint for exception to discharge or denial of discharge, or both, through and

20   including June 7, 2016.  Therefore, this action is timely filed.

21   5.    Venue is proper in this district pursuant to 28 U.S.C. § 1409.

### II.

### THE PARTIES

25   6.    Plaintiff VLK Inc. is, and all times mentioned herein was, an Indiana corporation

26   doing business in the County of Miami, Indiana.

27   7.    Plaintiff VLK Risk is, and all times mentioned herein was, an Indiana corporation

28   doing business in the County of Miami, Indiana.

2

8.     Plaintiffs are informed, believe and based thereon allege that Defendants are individuals over the age of 18, the debtors herein and at all relevant times herein resided in the County of Orange, California.  Upon information and belief B. Murphy is the founding owner and an officer of C & W Murphy and Associates, Inc. ("C&W"), a California corporation and chapter 7 debtor in related case no. 8:16-bk-10045-MW filed on January 6, 2016.  Upon information and belief C. Murphy is an owner and officer of C&W and the wife of B. Murphy.

9.     Upon information and belief, at all times prior to C&W's bankruptcy filing, B. Murphy and C. Murphy owned and controlled C&W.  Upon information and belief, C&W operated under its own name and as "SureFire Institute" and "Firearms Training Associates."

### III.

### GENERAL ALLEGATIONS

10.     Prior to the Petition Date, Plaintiffs commenced an action against C&W, the Defendants, the Defendants' daughters Jacquelyne Murphy and Cristen Durham, and the Defendants' son-in-law Brandon Durham, among others, in the Superior Court of the State of California, County of Orange – Central Justice Center, Case No. 30-2015-00795499-CU-BC-CJC, entitled *VLK Risk Consultants, Inc. et al. v. C & W Murphy and Associates, Inc. et al.* (the "State Action").  The State Action is currently stayed with respect to the Defendants and C&W, but is ongoing against the non-debtor defendants.  The State Action and this proceeding involve the same core group of facts.

### A.     The Saudi Contract and Its Financing

11.     VLK Risk is a highly specialized consultation and services company, founded by Kenneth Licklider ("Licklider"), providing strategic and tactical stability support with turn-key mission solutions, which ensure the safety and structured readiness of governmental and corporate ventures worldwide.  VLK Risk provides risk services, risk mitigation, sector security services, energy strategy services, landmine rehabilitation services, canine services, life and disaster support services, and occupational health, safety, and environment management. VLK Risk is used for Licklider's overseas projects.

3

12.     VLK Inc., also founded by Licklider, provides trained canines and canine training programs for police and military personnel across the world.

13.     Upon information and belief, C&W engaged in the business of developing ballistic protection, blast mitigation, and industrial coating products – including body armor – for use by law enforcement, government, and private sectors worldwide.

14.     In around June or July 2011, B. Murphy and Licklider met and established a business relationship, in which they undertook to develop business opportunities for the mutual benefit of each other and their companies.  Licklider then introduced B. Murphy to various potential buyers for its body armor products.  One of those suitors was the Kingdom of Saudi Arabia, which agreed to make a large purchase of at least 10,000 sets (the "Saudi Contract").  The amount of the Saudi Contract was expected to be approximately $33 million.

15.     C&W could not afford to finance the Saudi Contract.  Accordingly Plaintiffs[1] agreed to obtain financing from VLK Inc.'s own bank (First Farmers Bank & Trust, "FFBT") and, in turn, lend such monies to C&W on a revolving basis up to $6 million at any one time (the "Loan").

16.     On January 26, 2012, VLK Inc. obtained financing for the Loan from FFBT, secured by Licklider's personal assets and the assets of VLK Inc. and C&W.  Plaintiffs then made the Loan available to C&W.  On January 30, 2012, Plaintiffs advanced $5.5 million to C&W and another $.5 million on April 5, 2012.  After partial paydowns and subsequent advances over the next few years, Plaintiffs loaned a total of $10.2 million to C&W.  All but $0.2 million of the Loan was advanced before the Loan was reduced to a writing prepared by C&W dated October 14, 2013.

17.     Under the Loan, C&W was to repay Plaintiffs the principal borrowed and zero interest for 24 months, plus a fee of 12% of the gross amount of the Saudi Contract.  During this

---

[1] While VLK Risk has alleged that it is the maker of the Loan, Defendants contend that VLK Inc., and not VLK Risk, is the maker of the Loan.  Accordingly, VLK Inc. was added as a plaintiff in the State Action in the alternative that the Court finds it to be the maker and thus the party in interest.  Accordingly, the maker of the Loan is herein collectively alleged to be Plaintiffs, and the obligations under the Loan are hereon alleged to be due and owing collectively to Plaintiffs.

4

period, Plaintiffs agreed to absorb the interest VLK Inc. was paying on the underlying FFBT loan,

*i.e.*, the interest cost was subsumed in the 12% fee Plaintiffs were to be paid.  In 24 months, the

Loan was to be repaid in full (on or before January 26, 2014 when the FFBT loan matured) or, at

Plaintiffs' option, the term could be extended provided that, in addition to the other amounts owed,

C&W would pay an amount equal to the interest (including default interest, if any), penalties

and/or fees accruing on the underlying FFBT loan on a going forward basis.  Copies of the Loan

Agreement are attached as **Exhibits A** and **B**.[2]

18.     C&W ultimately entered into the Saudi Contract on or around January 26, 2012,

through Secure Technology Company aka SecurTech -- a Saudi company which held the contract

with the Royal Guard of Saudi Arabia and received payments totaling approximately

$23,347,049.87 from SecurTech.

19.     By January 26, 2014, C&W failed to repay the Loan in full.  Plaintiffs loaned a total

of $10.2 million to C&W from January 2012 through June 2014, but C&W only paid back $6.0

million of principal and a portion of the 12% fee.  Accordingly, although some payments were

made, the following amounts remain outstanding: (i) a principal balance of $4.2 million ($10.2

million - $6.0 million), (ii) interest, penalties and/or fees accrued on the underlying FFBT loan

after January 26, 2014 through the Petition Date (an amount believed to exceed $0.5 million), and

(iii) the unpaid balance of the 12% fee (an amount believed to be approximately $0.5 million).

### B.     The Scheme to Defraud Plaintiffs

20.     Upon information and belief, after Defendants borrowed the initial $6.0 million

under the Loan, they formed a scheme to defraud and harm Plaintiffs by causing C&W to take new

advances under the Loan (an additional $4.2 million) without ever intending to repay such

advances.  Defendants did so even though C&W collected in excess of $23 million on the Saudi

Contract and even though Defendants knew that VLK Inc. and Licklider, personally, were

obligated to FFBT on the underlying loan.  As recently as 2014, C&W received payments on the

---

[2] With identical terms, there are two versions of the Loan Agreement.  Only the one signed by
VLK Risk is fully executed.

Murphy - Nondischargeability Complaint v2

000053

Danker Law Firm

Saudi Contract of $749,960 (August 15), $1,248,292 (October 7), and $999,960 (November 26) on the Saudi Contract. B. Murphy informed Licklider that C&W would pay VLK $1.0 million from those last collections, but did not. Instead, B. Murphy told Jerry Johnson, one of his former employees, that he never had any intention of paying VLK more than the initial $6.0 million he had caused C&W to borrow from VLK.

21.    Upon information and belief, Defendants fraudulently transferred assets out of C&W to themselves, their children, their son-in-law, and affiliated companies in the form of home mortgage payments and home renovations, hunting trips, designer jewelry purchases, art work purchases, exotic automobile purchases, firearms purchases, private jet trips and vacations, countless personal meals, and by gifting approximately $750,000.00 to Cristen Durham and approximately $80,000.00 to Jacquelyne Murphy for their purchases of a home, among other things, and all shared a set of American Express and Chase credit and debit cards used for both business and personal expenses. The expenses for the Saudi Contract were run, and the funds received by C&W under the Saudi Contract were used, through those same collective accounts.

22.    Plaintiffs are attempting to gather information (along with the Chapter 7 trustee) through the 341(a) creditors' meetings and otherwise conduct discovery as to the Defendants' prepetition and postpetition actions and reserve the right to amend this complaint

**IV.**

**FIRST CLAIM FOR RELIEF**

**(Exception from Discharge Pursuant to 11 U.S.C. § 523(a)(2)(A) for False Pretenses, False Representations, or Actual Fraud, Other than a Statement in Writing)**

23.    Plaintiffs refer to, re-allege, and incorporate by reference the allegations of Paragraphs 1 through 22, inclusive, as if fully set forth herein.

24.    The Loan was a revolving loan. After the initial advances totaling $6.0 million and partial repayments, Defendants caused C&W to take an additional $4.2 million in advances under the Loan without any intention to repay them or the fees, penalties and interest that began accruing

6

on the Loan on and after January 26, 2014, or the balance of the commissions that were owed to

Plaintiffs.

25.     Defendants caused C&W to make a series of fraudulent transfers to insiders during

the time that C&W was taking new advances on the Loan to render C&W unable to repay the new

advances.

26.     Defendants' pretenses in causing C&W to take these additional advances were false.

27.     Defendants' actions in causing C&W to take advances under the Loan in excess of

$6.0 million without any intention were actually fraudulent as to the Plaintiffs.

28.     As a proximate result of Defendants' false pretenses and actual fraud, the debt owed

to Plaintiffs, in an amount subject to proof at time of trial, but not less than $5.2 million, is non-

dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

# V.

## SECOND CLAIM FOR RELIEF

### (Exception from Discharge Pursuant to 11 U.S.C. § 523(a)(6) for Willful and Malicious Injury)

29.     Plaintiffs refer to, re-allege, and incorporate by reference the allegations of

Paragraphs 1 through 28, inclusive, as if fully set forth herein.

30.     Defendants, with wrongful and malicious intent, and without just cause or excuse,

induced and caused Plaintiffs to make subsequent advances to C&W under the Loan without any

intention of Defendants or C&W repaying them.

31.     Defendants, with wrongful and malicious intent, and without just cause or excuse,

engaged in a scheme to divert assets from themselves and C&W to render themselves and it unable

repay the subsequent advances.

32.     Defendants did so knowing that Plaintiff VLK Inc. and Licklider, personally, were

obligated to their own bank, FFBT, to repay the full underlying balance, had encumbered their own

7

assets to obtain the underlying loan, and would be harmed if not repaid for the subsequent advances.

33.     As a proximate result of the willful and malicious injury Defendants caused Plaintiffs, the debt owed to Plaintiffs, in an amount subject to proof at time of trial, but not less than $5.2 million, is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

### VI.

### THIRD CLAIM FOR RELIEF

**(Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(3) Failure to Keep or Preserve Recorded Information)**

34.     Plaintiffs refer to, re-allege, and incorporate by reference the allegations of Paragraphs 1 through 33, inclusive, as if fully set forth herein.

35.     Section 727(a)(3) of the Bankruptcy Code, 11 U.S.C. § 727(a)(3), denies a discharge to a debtor if he has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all circumstances of the case.

36.     At the 341(a) meeting of creditors for C&W, Defendant B. Murphy testified to Defendants and C&W having virtually no records of the business dealings of C&W.  Defendants also failed to maintain hard copy backups of the business information for C&W they claimed was located on two laptop computers purportedly stolen from C&W in September 2015.

37.     Defendants, with the help of insiders, have attempted to conceal their looting of C&W through the concealment, destruction, and failure to preserve information regarding their financial condition and the financial condition of C&W.

38.     Defendants' failure to keep or preserve adequate recorded information was not justified.

8

000056

**VII.**

**FOURTH CLAIM FOR RELIEF**

**(Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(5) Failure to Explain any Loss or Deficiency of Assets)**

39.     Plaintiffs refer to, re-allege, and incorporate by reference the allegations of Paragraphs 1 through 38, inclusive, as if fully set forth herein.

40.     Section 727(a)(5) of the Bankruptcy Code, 11 U.S.C. § 727(a)(5), denies a discharge to a debtor if he has failed to satisfactorily explain any loss of assets or deficiency of assets to meet the debtor's liabilities.

41.     Over a period of two years, 2012-2014, C&W collected in excess of $23 million under the Saudi Contract.  The Defendants have failed to satisfactorily explain where this money went.

42.     There is a balance owed on the Saudi Contract believed to be in excess of $5 million.  At the 341(a) meeting of creditors for C&W, Defendant B. Murphy testified that C&W delivered all goods owed under the Saudi Contract and that such goods were accepted by SecurTech.  Defendants have failed to satisfactorily explain why SecurTech did not pay the balance owed under the Saudi Contract.

43.     Sometime in 2012, Defendants caused C&W to agree to pay a 10% commission ($3,026,400.00) to Cristen Durham on account of her alleged introduction of Plaintiffs to C&W.  Plaintiffs did not approach Cristen Durham with respect to the opportunity to obtain the Saudi Contract.  Ms. Durham's involvement in the purported introduction consisted of her printing out an email that Plaintiffs directed to B. Murphy and handing it to him.

44.     On or about June 29, 2012, Defendants caused C&W to agree to convert the $3,026,400 "commission" it allegedly owed to Ms. Durham on account of the Saudi Contract to a payment of the profits it was owed on a contract with Wyle Labs, LLC (the "Wyle Commission").  In or around December 2012, Defendants caused C&W to pay $750,000 to Ms. Durham on account

Murphy - Nondischargeability Complaint v2

000057

of the Wyle Commission. In December 2012, Ms. Durham used the Wyle Commission to purchase a home in the Anaheim Hills for $755,000.

45. On information and belief, Defendants caused C&W to not report payment of the Wyle Commission to taxing authorities as income to Ms. Durham. Subsequently, Ms. Durham extensively remodeled her Anaheim Hills home and Defendants caused C&W to pay many of the expenses associated with the remodel.

46. Defendants have failed to satisfactorily explain why they caused C&W to pay $750,000 to Cristen Durham or why they caused C&W to pay many of Ms. Durham's personal expenses for the remodel.

47. Defendants also caused C&W to pay many other personal expenses of Ms. Durham and other insiders of C&W, including expenses for vacations, first class air travel to purchase a dog, and acquisitions and repairs for personal exotic cars such as Ferraris and Bentleys. Defendants have failed to satisfactorily explain why they caused C&W to pay such expenses.

# VIII.

# FIFTH CLAIM FOR RELIEF

**(Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(7) Debtor has Committed any Act Under Sections 727(a)(2), (3), (5) or (6) in connection With Another Case Concerning an Insider)**

48. Plaintiffs refer to, re-allege, and incorporate by reference the allegations of Paragraphs 1 through 47, inclusive, as if fully set forth herein.

49. Section 727(a)(7) of the Bankruptcy Code, 11 U.S.C. § 727(a)(7), denies a discharge to a debtor who commits any act specified in 11 U.S.C §§ 727(a)(2), (3), (4), (5) or (6) on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under Title 11 concerning an insider.

50. Pursuant 11 U.S.C. § 101(31), C&W is an insider of the Defendants and a debtor in related Case No. 8:16-bk-10045-MW.

Murphy - Nondischargeability Complaint v2

000058

**Danker Law Firm**

51.     Defendants have caused C&W to fail to keep or maintain adequate books and records from which C&W's financial condition or business transactions might be ascertained as required by Section 727(a)(3).  Such failure was not justified.

52.     In violation of Section 727(a)(5), Defendants have caused C&W to fail to adequately explain the numerous fraudulent transfers it made to other insiders, including Cristen Durham, and why it did not report its payment to Ms. Durham of $750,000 to taxing authorities as income.

## IX.

## PRAYER FOR RELIEF

WHEREFORE,  Plaintiffs pray for relief against the Defendants, and each of them, jointly and severally as follows:

## FIRST CLAIM FOR RELIEF

1.     For an order determining that Plaintiffs' claims against the Defendants are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) in an amount subject to proof at time of trial, but not less than $5.2 million,

2.     Any additional amount as yet unknown, but according to proof,

3.     For pre-judgment interest on any amount recovered at the lawful rate in an amount to be established according to proof at trial,

4.     For attorneys' fees and costs incurred herein, and

5.     For such other and further relief as the Court may deem just and proper.

## SECOND CLAIM FOR RELIEF

1.      For an order determining that Plaintiffs' claims against the Defendants are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) in an amount subject to proof at time of trial, but not less than $5.2 million,

11

000059

2.     Any additional amount as yet unknown, but according to proof,

3.     For pre-judgment interest on any amount recovered at the lawful rate in an amount to
       be established according to proof at trial,

4.     For attorneys' fees and costs incurred herein, and

5.     For such other and further relief as the Court may deem just and proper.


**THIRD, FOURTH AND FIFTH CLAIMS FOR RELIEF**

1.     For an order denying Defendants their discharges pursuant to 11 U.S.C. §§ 727(a)(3),
       (5), and (7), or any of them,

2.     For attorneys' fees and costs incurred herein, and

3.     For such other and further relief as the Court may deem just and proper.


Dated: June 7, 2016                     SALISIAN LEE LLP


                                        By: _____
                                              Neal S. Salisian
                                        Co-counsel for Vohne Liche Kennels, Inc.
                                        And VLK Risk Consultants, Inc.

Dated: June 7, 2016                     DANKER LAW FIRM


                                        By:  /s/ Ashleigh A. Danker
                                              Ashleigh A. Danker
                                        Co-counsel for Vohne Liche Kennels, Inc.
                                        And VLK Risk Consultants, Inc.

12

### DECLARATION OF WILLIAM J. MURPHY

I, William J. Murphy, hereby declare and state as follows:

1.      I am over the age of eighteen years.

2.      My wife Cheryl and I are retired police officers.

3.      In 2011 we started a corporation call C & W Murphy, Inc. ("C&W") to provide law enforcement and military consulting services to clients throughout the country.

4.      C&W was in the business of providing law enforcement and military consulting services and products to a national and international clientele.

5.      In 2011, C&W entered into a contract with a Saudi Arabian corporation called SecureTech, pursuant to which C&W agreed to supply 10,000 protective body armor plates to the Royal Guard of the Kingdom of Saudi Arabia (the "Saudi Contract").

6.      In order to fund the manufacturing cost associated with the Saudi Contract C&W entered into a lending relationship with the Plaintiff (the "Loan"). C&W was the sole borrower under the terms of the Loan, and there were no guarantors.

7.      During the 2011 through 2013 period, VLK advanced approximately $10.0 million to the C&W under the Loan, *and C&W made approximately $8.3 million in payments on account of this obligation*.

8.      C&W fully intended to make the final payment due the Loan, a sum that is disputed, upon the receipt of the last $5.6 million payment due under the Saudi Contract.

9.      Unfortunately, days before this payment was scheduled to be paid, VLK contacted SecureTech's agent in Saudi Arabia and demanded that SecureTech remit the $5.6 million payment to VLK.

10.      In support of the foregoing tortious demand, VLK disclosed that interest was payable under the terms of its loan agreement. Since interest is prohibited under Sharia law, and since the agent responsible had an adverse relationship with VLK (due to a prior contractual relationship with VLK), SecureTech refused to make the final payment on the Saudi Contract.

11.      VLK's interference with the Saudi Contract not only deprived C&W of the ability to repay the balance owed on the loan, it created cash flow problems within the company. These

000061

cash flow problems and litigation costs associated with VLK related litigation ultimately forced this entity to file a Chapter 7 case.

12.    My wife and I concurrently filed an individual Chapter 7 petition since we had also been rendered insolvent by VLK's ruin of C&W, and by the litigation costs associated with the lawsuit that VLK initiated against C&W and my wife and I personally.

13.    Margaret Murphy was employed by C&W part-time during the 2012 through early 2014 time frame to perform basic office services. My recollection is Ms. Murphy was paid less than $10,000 per year for these services.

14.    Margaret Murphy loaned C & W the sum of $60,000 in December of 2014 to address a short-term cash flow need. The loan proceeds were paid to Cristen Durham, my daughter. All or substantially all of these loan proceeds were used to pay C & W's bills and debts. Cristen either deposited the funds into C & W's account, or she wrote checks to C & W vendors directly from her account, using these funds, to pay C & W bills. Since I do not have all of the bank records for this period, I do not have the exact detail of the dollars flowing into C & W, or the detail of the payments made for the benefit of the corporation from the loan proceeds. C & W repaid the foregoing $60,000 loan to Margaret Murphy in March of 2014.

15.    C & W made a short-term loan to Margaret Murphy pursuant to the promissory note attached hereto as Exhibit "C". This loan was repaid less than a month later as indicated on the attached note.

16.    During the 2013 through 2015-time frame, C&W was generating over $4,000,000 in revenues annually and it was paying out millions of dollars to vendors and other obligors, including over $9.3 million to VLK, of which $8.3 million was paid on the Loan.

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 27th day of March, 2017.

William J. Murphy

12

000062

### DECLARATION OF MARGARET MURPHY

I, Margaret Murphy, hereby declare and state as follows:

1.      I am seventy-six years old.

2.      I have suffered three strokes, I am being treated for diabetes, and I had a stent put in my heart in December of 2016.

3.      I no longer drive due to my health problems.

4.      During 2012 and 2013, I worked for C&W part-time doing office work, such as filing and copying. I do not recall my exact earnings for these services, but the wages I received totaled less than $10,000 per year.

5.      In December of 2013, I loaned $60,000 to C & W. Attached hereto as Exhibit "D" is a copy of my check receipt. I wrote this check to Cristen Durham, my granddaughter, who was working for C & W. It was my understanding that the proceeds of this loan were being used to pay C & W expenses. C & W repaid this $60,000 loan in 2014.

6.      In March of 2014, I borrowed $25,000 from C & W. Attached hereto as Exhibit "E" is a copy of the check payable to me from C & W reflecting this loan and my deposit slip.  I repaid this loan within a month using a cashier check payable to my son, William Murphy, the owner of C & W. Attached hereto as Exhibit "F" are the receipts for this cashier's check.

7.      On February 24, 2017, I received a series of calls from attorney Ashleigh Danker. During these calls Ms. Danker threatened to have me sanctioned unless I produced the documents that she wanted. Although I explained that I either did not have or could not find these documents, she refused to accept this answer and continued to harass me with additional phone calls. This course of conduct caused me to suffer severe stress and deprived me of the ability to rest.

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 27th day of March, 2017.

Margaret Murphy

000063

**EXHIBIT "D"**

000064



000065

**EXHIBIT "E"**

**EXHIBIT "F"**

Checking / Savings Deposit - CA    CREDIT

Bank of America

Name and Address

Date 3-14-14

Margaret murp

Telephone

Sign here if cash received

All items received subject to terms and conditions of applicable laws, regulations and deposit agreement.

**Save time in line and help us avoid errors. The next time you make a deposit, please use your pre-printed deposit slips for your account.**

Currency
Coin
Cash

Checks

Sub Total

Less Cash Received

Total Deposit    $ 25,000.00

Account Number

---

2848

C & W MURPHY AND ASSOCIATES
23665 VIA DEL RIO
YORBA LINDA, CALIFORNIA 92887

90-7162-3222

DATE 3-14-14

PAY TO THE ORDER OF Margaret Murphy    $ 25,000.00

twenty-five thousand 00/100    DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR Joan

Cristen Durham

⑈00 2848⑈ ⑈3 2 2 2 7 ⑈6 27⑈    4066 29340⑈

003431

**EXHIBIT "G"**





# Bank of America

## Cashier's Check

Notice to Purchaser - In the event this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Banking Center

Date

Remitter (Purchased By)

**Pay**
**To**
**The**
**Order**
**Of**

**VOID AFTER 90 DAYS**

Bank of America, N.A.
Phoenix, AZ

05-14-3774B 02-2012

000073

**Bank of America**

# Cashier's Check

Notice to Purchaser – In the event this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Banking
Center

Date

Remitter (Purchased By)

MERCHANT MURPHY

Pay
To
The
Order
Of

VOID AFTER 90 DAYS

Bank of America, N.A.
Phoenix, AZ

05-14-3774B 02-2012

000074

003438

# Cashier's Check

## No. 0005527599

91-170/1221

NAZ

Date

Remitter (Purchased By)

$

Authorized Signature

**Customer Copy**
**Retain For Your Records**

000075

Cashier's Check

No. 0000527599

91-170/1221

NAZ

Date

Remitter (Purchased By)

MARGARET MURPHY

$ **25600.00**

Authorized Signature

**Customer Copy**
**Retain For Your Records**

Tran 00032    04/07/2010   11:16   HCA
R.T# 540930155 01 000050   Tr 00010

003439

000076

I, Dr. Zuhra Musherraf, am licensed to practice medicine in the State of California. I hereby opine as follows as a medical professional:

1.      Margaret Murphy is one of my patients.

2.      Ms. Murphy is 76 years old and her medical condition is precarious. She has suffered three strokes and suffers from diabetes.

3.      Stress is a material contributor to strokes. Requiring Ms. Murphy to travel to downtown Los Angeles to endure a deposition will substantially raise her stress level and materially increase the risk of another stroke. Another stroke could not only physically and permanently debilitate this woman, it could be life threatening.

4.      It is my medical opinion that Ms. Murphy should be excused from attending this deposition for the foregoing health reasons.


I declare that the foregoing is true and correct under the penalty of perjury.


Executed this ___20___ day of March, 2017, in Orange County, California.


_____
Dr.


Southern California Permanente Medical Group
Kaiser Permanente
Yorba Linda Medical Offices
22550 Savi Ranch Parkway
Yorba Linda, CA  92887

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2 Park Plaza, Suite 650, Irvine, CA 92614.

A true and correct copy of the foregoing document entitled: **MOTION TO QUASH SUBPOENA ISSUED TO NON-PARTY MARGARET MURPHY AND FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF SEAN A. O'KEEFE, MARGARET MURPHY, WILLIAM J. MURPHY AND DR. ZUHRA MUSHERAFF IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 27, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 3/27/2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Mark Wallace
411 West Fourth Street, Suite 6135
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/27/2017 | Sean A. O'Keefe | /s/ Sean A. O'Keefe |
|-----------|-----------------|---------------------|
| *Date* | *Printed Name* | *Signature* |

NEF LIST

- **Jason Balitzer**      jbalitzer@sulmeyerlaw.com,
  jbalitzer@ecf.inforuptcy.com;dwalker@ecf.inforuptcy.com;slee@sulmeyerlaw.com
- **William M Burd**    wmburd@burd-naylor.com, mcrouch@burd-naylor.com
- **Ashleigh A Danker**    adanker@dankerlawfirm.com
- **Howard M Ehrenberg**    hehrenberg@sulmeyerlaw.com,
  hehrenberg@ecf.inforuptcy.com;mviramontes@ecf.inforuptcy.com
- **Marc C Forsythe**    kmurphy@goeforlaw.com,
  mforsythe@goeforlaw.com;goeforecf@gmail.com
- **Jeffrey I Golden (TR)**    ljones@wgllp.com,
  jig@trustesolutions.net;kadele@wgllp.com;lfisk@wgllp.com
- **D Edward Hays**    ehays@marshackhays.com, ecfmarshackhays@gmail.com
- **Sheryl K Ith**    sith@cookseylaw.com, sith@ecf.courtdrive.com
- **Peter B Langbord**    plangbord@foleymansfield.com
- **Erin P Moriarty**    emoriarty@kosmalalaw.com,
  wkosmala@kosmalalaw.com;jfountain@kosmalalaw.com;weneta.kosmala@7trustee.net
- **Sean A OKeefe**    sokeefe@okeefelc.com
- **Neal Salisian**    ECF@salisianlee.com
- **Ashley M Teesdale**    ateesdale@marshackhays.com, ecfmarshackhays@gmail.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Cheryle R Williams**    notices@bkservicing.com